**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1647

STEPHEN SCHAFER,

Plaintiff – Appellant,

v.

STATE OF MARYLAND DEPARTMENT OF HEALTH AND MENTAL HYGIENE,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Andre M. Davis, District Judge. (1:07-cv-01213-AMD)

Argued: September 23, 2009          Decided: December 30, 2009

Before NIEMEYER and SHEDD, Circuit Judges, and Mark S. DAVIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Niemeyer and Judge Davis joined.

**ARGUED:** Darren Margolis, BIERER & MARGOLIS, Baltimore, Maryland, for Appellant. John S. Nugent, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF:** Douglas F. Gansler, Attorney General of Maryland, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Stephen Schafer filed this employment discrimination action under Title VII of the Civil Rights Act of 1964 claiming that the Maryland Department of Health and Mental Hygiene (the "Agency") failed to promote him because of his gender and race. The district court granted summary judgment in favor of the Agency, concluding that (1) Schafer failed to present probative "direct evidence" of discrimination, and (2) the Agency offered legitimate nondiscriminatory reasons for not promoting Schafer and, therefore, there was no genuine dispute of material fact as to pretext. Because we find that the district court erroneously held there was no direct evidence of race or gender discrimination, we vacate the summary judgment order and remand for further proceedings.[1]

---

[1] Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's order granting summary judgment de novo. Jennings v. U.N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc). In doing so, we generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Schafer, a Caucasian male, has been employed by the Agency since 1975. He is currently the Medical Care Program Supervisor with the Agency's Beneficiary Enrollment Services, a position he has held since 1998. In January 2006, a Program Manager III position as the Division Chief of the Beneficiary Enrollment Call Center became available within the Agency. Schafer was one of 40 persons to apply for the position and was among the 13 applicants who were deemed "qualified." A five-member Selection and Evaluation Committee interviewed eight of the 13 "qualified" applicants and thereafter recommended four applicants, including Schafer, to be considered by a Final Selection Committee. The final selection was then submitted to the Agency's Deputy Executive Director Mary Dehart and Executive Director Charles Lehman.

The Final Selection Committee consisted of three Agency employees: Patricia Nowakowski, Lisa M. Kulishek, and Patricia Rutley-Johnson. Kulishek was the Director of Eligibility Operations, Nowakowski was the Deputy Director of Eligibility Operations, and Rutley-Johnson was a senior staff advisor. Nowakowski reported to Kulishek, and Kulishek reported to Dehart.

Although the Final Selection Committee was tasked with recommending a finalist for the position, Nowakowski testified

that the ultimate decision would have to be approved by Dehart and Lehman.  J.A. 87.  Nowakowski further testified that while Dehart would usually just give "a formal 'okay' at the end" of the process, Dehart was more involved than normal in this instance.  Id.  Rutley-Johnson also believed that Dehart was heavily involved in the decision-making of who was to be hired for this position.  She testified that "regardless of who was chosen as a candidate, Mary Dehart was the person that ultimately had decision-making power because that was Lisa Kul[is]hek's supervisor."  J.A. 217.

Initially, Dehart testified that she was not involved in the selection process.  However, she admitted that she instructed the Final Selection Committee to select the "candidate they thought best suited for the position."  J.A. 171.  She also admitted that she had to confirm the hire after the selection was made and that members of the committee came to her for advice during the selection process.  J.A. 172, 175.

After interviewing the finalists, the Final Selection Committee, voting 2-1, decided that the Division Chief position should be offered to Elise Green-Watford, an African-American female.  Nowakowski, the dissenting committee member, voted for Schafer because she believed he was the most qualified applicant.  Dehart confirmed the recommendation and, thereafter, the position was offered to Green-Watford, and she accepted.

4

Among the evidence Schafer offered in support of his discrimination claim is testimony from Nowakowski that she attended a meeting with Lehman, Dehart, and Kulishek during which Dehart stated that an African-American female should be hired as the new Division Chief. J.A. 85-86. Additionally, Dehart allegedly told Nowakowski at a later date "that the Department was lacking African-American female management and we had to hire some." J.A. 87. Nowakowski also testified that she and Schafer were present at a lunch before the interview process had even been completed when Rutley-Johnson stated "that this position was a done deal, and an African-American female candidate was going to be hired." J.A. 89.

The district court granted summary judgment in favor of the Agency because it found that Schafer failed to present probative "direct evidence" of discrimination. Further, although the district court found that Schafer made a prima facie case of discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), it found that the Agency had offered legitimate nondiscriminatory reasons for awarding the position to Green-Watford instead of Schafer and, therefore, there was no genuine dispute of material fact as to pretext. This appeal followed.

5

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . [or] sex." 42 U.S.C. § 2000e-2(a). A plaintiff can defeat summary judgment in a discrimination action under Title VII by either of two avenues of proof: (a) through direct evidence that gender, race, or both motivated the decision not to promote him, or (b) through the burden-shifting scheme established by McDonnell Douglas Corp., 411 U.S. at 802. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004)(en banc). Under the direct proof standard, the plaintiff must only show that his gender or race was a "motivating factor" in the decision not to promote him. Id. at 284. Further, such proof includes evidence of conduct or statements that reflect a discriminatory attitude and bear directly on the contested employment decision. Id. at 284-85.

Schafer contends that he offered at least two items of direct evidence of discrimination. Specifically, he claims his direct evidence includes (1) Rutley-Johnson's statement that "this position was a done deal, and an African American female was going to be hired," and (2) Dehart's statements that an African-American female should be hired as the new Division

6

Chief.  The district court concluded that these statements are not direct evidence.  Specifically, the court held that Dehart was not an actual decisionmaker under <u>Hill</u>, and there is "no direct evidence whatsoever to show that Kulishek and Rutley-Johnson were improperly motivated by race or gender in their decision."[2]  J.A. 267.

When a plaintiff proceeds under a direct evidence claim of discrimination, we have held that in order for the plaintiff to survive summary judgment, he must produce sufficient evidence that the discriminating "employee possessed such authority as to be viewed as the one principally responsible for the decision or

---

[2] The district court also stated that "even assuming that Nowakowski's <u>hearsay</u> testimony would be admissible at trial," her statements would be "stray remarks." J.A. 267 (emphasis added).  We disagree with the district court's characterization that this testimony is "hearsay."  <u>See</u> <u>Pitrolo v. County of Buncombe, N.C.</u>, 2009 WL 1010634 (4th Cir. March 11, 2009). Federal Rule of Evidence 801(d)(2) defines as <u>non-hearsay</u> a statement "offered against a party" that is "the party's own statement, in either an individual or a representative capacity" or "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment."  Dehart was the Deputy Executive Director of the Agency; hence, she was an "agent" within the meaning of Rule 801(d)(2).  Likewise, Rutley-Johnson's statement would also be admissible under the same basis.  Rutley-Johnson was a member of the Final Selection Committee and would be an "agent" within the meaning of Rule 801(d)(2).  Therefore, we find that the alleged statements made by Dehart and Rutley-Johnson are not hearsay and are admissible under Rule 801(d)(2) as a "party-opponent admission."  Further, statements related to the hiring decision made by an actual decisionmaker are not "stray remarks."  <u>Cf.</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring).

7

the actual decisionmaker for the employer." Hill, 354 F.3d at 291. With this in mind, we must decide whether Schafer has presented sufficient evidence to demonstrate that he has been the victim of intentional discrimination based upon the actions of an actual decisionmaker.

We hold that Schafer has presented evidence tending to establish that an actual decisionmaker used an improper criterion in making the employment decision. First, even were we to accept the Agency's argument that only members of the Final Selection Committee are actual decisionmakers, evidence in the record tends to show that committee member Rutley-Johnson used an improper criterion in selecting Green-Watford. Specifically, Rutley-Johnson's statement "that this position was a done deal, and an African-American female candidate was going to be hired" could reasonable be understood as direct evidence of discrimination by the committee member who cast the deciding vote.

Further, contrary to the Agency's position that Dehart's role was limited to the ministerial function of signing off on the recommendation of the Final Selection Committee, there is a genuine factual dispute concerning whether Dehart is an actual decisionmaker. Cf. Hill, 354 F.3d at 290 (noting that "[w]hen a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by

8

[another employee], it is not inconsistent to say that the [other employee] is the actual decisionmaker or the one principally responsible for the contested employment decision").

Here, there is testimony from which a jury could find that Dehart was the actual decisionmaker. Nowakowski and Rutley-Johnson indicated that Dehart was such a decisionmaker, and Dehart's testimony itself establishes that (1) she had a significant degree of supervision over the committee, (2) the committee sought her advice during the hiring process, (3) she gave instructions to the committee, and (4) she had to ultimately confirm its selection. Therefore, we hold that a jury could find that Dehart was an actual decisionmaker. Further, a jury could find that Dehart used an improper criterion in the employment decision based on her statements that an African-American female should be hired for the position.

### III

Because there is evidence that the actual decisionmaker based the decision not to promote Schafer on his race or gender, we vacate summary judgment and remand for further proceedings.[3]

VACATED AND REMANDED

---

[3] Because we find direct evidence of discrimination in this case, we need not address the McDonnell Douglas test.